DAVIS, Circuit Judge, with whom MAR-KEY, Chief Judge, and FRIEDMAN, Circuit Judge,
join, concurring in the result.
This case presents, in acute form, the recurrent problem of the tension between statutory language and legislative history. I write separately because, for me, the plurality opinion overstresses the alleged “ambiguity” of the statute, while the dissenters underplay the role of the legislative history. My general position is that pertinent legislative history is never wholly irrelevant in the construction of a statute but that the interrelationship of that history with the statutory text follows a continuous spectrum measuring the strength of the language, on the one hand, and the strength of the history, on the other. The more compelling and definitive the words are, the less controlling the legislative history; conversely, the less compelling and definite the language, the more controlling the history to the extent of its strength.[1] *416 In this particular instance, my judgment is that Congress’ words can permissibly accommodate a certain degree of breadth which is required by the very strong legislative history.
I start with the statutory words. If there were no pertinent legislative history (or if it were amorphous or weak) I would certainly adopt the appellees’ reading. To me, the normal meaning of section 107d-3(d) (exempting “income from vending machines within the retail sales outlets under the control of exchange or ships’ stores systems authorized by title 10") (emphasis added) covers only vending machines within post exchange stores (or perhaps immediately outside and adjacent to those facilities). However, that wording is not as precise or as definite as if the statute reached only vending machines “inside” exchange stores or ships’ stores; rather, the words Congress actually used—“within the retail sales outlets under the control of [military] exchange ... systems ” (emphasis added)—can have a wider reach and potentially be read, without necessarily turning white into black, as including all vending machines operated by the military exchange systems. As I have said, I would not take that course unless the legislative history compelled (or very strongly supported) that broader interpretation.
I agree with the plurality’s view of the statute because, as I see it, the germane legislative history is very strong and points directly to the wider construction. The colloquy, on the floor of the House of Representatives, between Congressman Brade-mas and Congressman Sikes[2] inescapably states that all vending machines operated by the military exchanges are exempt from the income sharing provision. This colloquy was not simply a floor exchange between two individual, ordinary members of the House. Congressman Brademas was Chairman of the House Select Education Subcommittee and floor manager of the very bill containing the disputed language; Congressman Sikes was Chairman of the House Armed Services Committee, obviously interested in the military exchange systems. Each spoke in that official capacity, and I think their joint views represented the position of their two committees. As the plurality opinion points out, the bill was passed by both Houses of Congress after the Sikes-Brademas colloquy. To me there is very little doubt that the colloquy had a primary role in the enacting of. this amendment to the Randolph-Sheppard Act— equivalent in essence to a formal statement in a committee report. In fact Congressman Brademas referred (in June 1976 at the time the Department of Health, Education and Welfare was drafting its regulations) to the Sikes-Brademas exchange as representing “the intent of Congress” (see plurality opinion, supra, p. 413). There is nothing in the remainder of the legislative history which contradicts or conflicts with the Sikes-Brademas colloquy; on the contrary, the relevant part of the Senate Report (S.Rep. No. 937, 93rd Cong., 2d Sess. 24 (1974)) seems in its generality to exempt all vending machines operated by military exchange systems. The sum of it, for me, is that the significant legislators concerned with the precise question before us deliberately and knowingly chose the military version of the meaning of the disputed phase.
I add, however, that I disassociate myself from the emphasis in the plurality opinion on the position of the Department of Justice as relevant to this interpretive issue. As the main dissent points out, the statute expressly gives to the Department of Health, Education and Welfare (now Health and Human Services (HHS)) the power to promulgate regulations necessary to assure compliance with the provision before us (20 U.S.C. § 107d-3(g))—not to the Department of Justice or to the Department of Defense. The fact is, though, that the current HHS regulations are of no help *417 because they do not deal at all with the dispute we are asked to resolve; an internal or unpublished HHS position (not promulgated in a regulation) does not have the status of a proper regulation, and need not be considered. In a word, there is now no regulation of which account should be taken in construing the statute.

. I believe my general position does not contravene any established or definitive Supreme Court rule. There are many different variations *416 in Supreme Court opinions on the use of legislative history, but in my understanding no definitive rule has emerged either that there are certain instances in which legislative history should not be considered at all, or that such history should always be taken into account.

. This colloquy is set forth in both the plurality opinion and the main dissent.